*Attorney-General H. E. Cooper, Deputy Attorney-General
E. P. Dole,* and *G. F. Little* for the respondent.

---

## IN THE MATTER OF HENRY E. COOPER, AN ATTOR-
NEY-AT-LAW.

ORIGINAL.

SUBMITTED JUNE 21, 1899.           DECIDED AUGUST 3, 1899.

JUDD, C.J., FREAR AND WHITING, JJ.

Charges against the respondent as a member of the bar held not sus-
    tained by the evidence.

The acts proved to have been done by the respondent were done by him
    in his capacity as Attorney-General and were not of such a nature
    as would justify proceedings against him as a member of the bar.

The Attorney-General cannot be held to account by the court for his
    official acts done within his legal powers.

OPINION OF THE COURT BY FREAR, J.

This is a complaint by A. S. Humphreys charging Henry E.
Cooper with malpractice and unprofessional conduct as a member
of the bar and praying that such order be made as under the
pleadings and proof may be proper.  The complainant as well as
the respondent is a member of the bar.  The respondent is also
the Attorney-General of the Republic.

The complaint is carefully drawn with a view to showing misconduct on the part of the respondent as an attorney at law and not as Attorney-General. The substance of the charge is that the respondent retained and intended to retain control of both sides of a criminal case and that he abridged the professional rights of the complainant who was employed to prosecute the case by threatening to take the case out of his hands if he should raise the objection in court to the appearance of the consul for the defense who was an employee in the Attorney-General's office. The respondent answered setting forth his version of the story and claiming that he acted as Attorney-General and in the utmost good faith and pursued a course that was proper and consistent with his duties as Attorney-General and as an attorney at law and that the complaint was not justified by the facts and was malicious and scandalous.

At the hearing a number of witnesses were examined and considerable latitude was allowed in the testimony, much of which it will be unnecessary to dwell upon, such as that relating to opinions upon the nature and moral quality of the acts of the respondent and that in regard to the writing or inspiring of articles by the complainant for publication in the newspapers.

The facts appear to be as follows: In April last one Carreira, a Portuguese interpreter and collector in the tax office, attempted to collect personal taxes of one Ah Me, a Chinese servant of Mr. A. T. Atkinson, at the latter's residence in this city. The Chinaman refused to pay on the ground that he was under twenty years of age and therefore exempt. The officer contended that he was twenty-four years of age and, being commissioned also as a police officer, arrested him upon a warrant. Mr. Atkinson and his family, believing that an unjustifiable assault and battery had been committed, were greatly incensed, and his son, who was an assistant to the Attorney-General and whose duties were in part those of a prosecuting officer, procured the arrest of Carreira on a charge of assault and battery.

The case was called up in the District Court the next day and continued at the request of the tax assessor. Mr. Atkinson, the

son, appeared for the prosecution, but, either because he heard that counsel was to be engaged for the defense or because he thought the Minister of Finance, in whose department the tax bureau is, considered the case one that was not well founded and ought not to be prosecuted or because he thought he ought not to appear in a case prosecuting a government officer, he asked the Attorney-General if he might engage private counsel to prosecute. The Attorney-General consented. Mr. Atkinson then engaged complainant. This he did, not as prosecuting officer, but on behalf of the Chinaman and with private funds. Mr. Atkinson also, feeling that his action in instituting the case was disapproved, told both the Minister of Finance and the Attorney-General that, if they did not approve his action, he would bring his witnesses to the tax office or the Attorney-General's office respectively for examination and that the case in court might be dropped. He was told by each that it would be better to have the case decided by the court. Mr. Atkinson did not appear further in the case and was not present at the trial which was conducted for the prosecution by Mr. Humphreys.

Meanwhile Mr. Shaw, the tax assessor, called on the Attorney-General and stated that he had been sent by Mr. Damon, the Minister of Finance, to request him to defend the case against Carreira and that the case was an important one as it was a common practice among the Asiatics to attempt to avoid paying their personal taxes by claiming that they were under age and that if Carreira should be convicted in this case, it would increase the difficulty of collecting such taxes from those classes. The Attorney-General replied that he could not defend the case as he had sanctioned the prosecution, and Mr. Shaw then said that if that were so the Minister of Finance wished him to furnish an attorney. The Attorney-General said that he would let Mr. Shaw know. It then occurred to him that he might avoid the employment of outside counsel at extra expense and that Mr. Weber might take charge of the defense if he were not too busy, Mr. Weber being then employed in the Attorney-General's department nominally as stenographer but really for the most part as a

private assistant to the Attorney-General in the preparation of briefs and the looking up of matters of law on questions referred to the department. Accordingly he told Mr. Weber that Mr. Damon wished assistance in the case and asked Mr. Weber if he had any objections to looking into the matter. Mr. Weber replied that he had not. The Attorney-General then told him that he, the Attorney-General, could not examine any of the witnesses or take any part in the case. Mr. Weber then assumed entire charge of the case, and what steps he took in it the Attorney-General never knew afterwards.

Mr. Atkinson, feeling that the engagement of counsel for the defense by the government was a reflection upon him, complained to the Attorney-General about Mr. Weber's appearing, but the Attorney-General told him that it was not intended as any reflection upon him at all and that Mr. Weber was to act for the Minister of Finance and would not represent him, the Attorney-General, in any way, shape or manner. Mr. Humphreys also, upon meeting the Attorney-General at a restaurant, threatened to publish him in the papers and charged him with interfering, as he considered it, in the case. The Attorney-General replied that he did not view it in that way but that if he, Mr. Humphreys, considered it an interference, he, the Attorney-General, would see Mr. Damon and ask him to employ some one else. The Attorney-General then went to Mr. Damon's office but did not find him in and was informed that he would not be in again that day. Knowing that the case was to come up the next day and being very busy with certain murder cases, the Attorney-General then concluded not to make any change and upon meeting the marshal just outside of Mr. Damon's office told him that Mr. Humphreys had pitched into him and threatened to publish him in the papers, that he considered there was nothing out of the way in Mr. Weber's trying the case at the request of Mr. Damon and that if Mr. Humphreys objected to his appearance he, the marshal, should exercise his prerogative and take the case out of Mr. Humphreys' hands and prosecute it himself. Mr. Humphreys expressed his views to Mr. Weber also and requested him to state the matter to

the Attorney-General. Mr. Weber did so and was told by the Attorney-General that he, Weber, represented the Department of Finance and not his office in any way and that he was to have complete charge of the case and carry it on as he saw fit.

At the opening of the District Court and shortly before the case was called, the marshal told Mr. Humphreys that Mr. Weber would appear for the defendant as representing the Finance Department and that if he should object to Mr. Weber's appearance, he, the marshal, would take the case out of his hands and prosecute the case himself. Mr. Humphreys then said that he would not prosecute the case, but finally concluded to do so upon the marshal's advice and upon his representation that he, Mr. Humphreys, had prepared the case for Mr. Atkinson and that the latter was not then present. The case was then tried. Mr. Humphreys appeared for the prosecution and had full control except as to the matter of raising the objection to Mr. Weber's appearance. Mr. Weber appeared for the defense stating that he appeared for the Finance Department, and had full charge of the defense. The court found that the tax officer in making the arrest had used a little more force than was necessary and at the request of the prosecution imposed a nominal fine.

Such are the facts. In view of the high official position of the respondent and the grave nature of the charges preferred this case has assumed considerable prominence and has been given much attention by counsel.

Much has been said in regard to the conduct of the complainant, especially in connection with his inspiring of articles for the newspapers. His counsel concedes that he was not justified in pursuing such a course after having gone, through counsel, to the court and after the court had issued an order to show cause. We shall not comment upon his conduct in this or other respects but turn our attention to the respondent in the case.

As already said, the complaint was carefully drawn with a view to showing malpractice and unprofessional conduct on the part of the respondent as a member of the bar. But so far as appears, he acted throughout as Attorney-General. No doubt a member of

the bar may perform acts in some other official capacity or even in a private capacity of such disgraceful, immoral or criminal character as to show him to be unfit to continue longer a member of the profession, and for such conduct he may be held to account by the court even to the extent of disbarment. But it is not contended that the respondent in this case was guilty of misconduct involving moral turpitude, or, perhaps, any acts of a character so disgraceful as, if not done in his professional capacity, would warrant action by the court against him in his professional capacity. If counsel do intend to go so far as to make such a contention as that last mentioned, we must hold that the facts do not bear them out. It is indeed not entirely clear just what the theory of counsel for the complainant is. An attempt is made to show the respondent guilty of misconduct as a member of the bar, and yet in spite of all efforts to adhere to such a theory, it has been found impossible in both the testimony and the arguments to avoid showing conduct, whatever its character, by the respondent solely as Attorney-General.

There are, as already stated, two charges. The first is that the respondent retained and intended to retain control of both sides of the case. If by this is meant that he retained control of the defense through Mr. Weber, as well as of the prosecution through Mr. Humphreys, one answer to it is that the undisputed evidence shows that such was not the case. Mr. Weber did not appear for the Attorney-General's department. He appeared for the Finance department. This was distinctly understood and announced on every proper occasion. The action of the respondent in connection with Mr. Weber so far as his control of the case was concerned was precisely what it would have been if he had at the instance of the Minister of Finance requested an outside attorney to appear for the Finance department. And what little he did in this connection he did, not as a member of the bar, but as Attorney-General.

The second charge is, that he abridged the professional rights of the complainant by not permitting him to raise a question as to Mr. Weber's appearance. Here again the respondent acted sole-

ly as Attorney-General. This is so manifest as not to require comment. No doubt it was exasperating and perhaps humiliating to the complainant to have this restraint put upon him, but that the respondent in so doing acted solely as Attorney-General and moreover within his legal powers there can be no question.

In expressing these views we do not intend to express approval of the Attorney-General's conduct. Neither do we intend to express disapproval. We do not feel called upon to enter upon a discussion of all the side issues and minor points commented upon in argument or to attempt a discourse upon morality or professional ethics, such as some of the arguments seem to invite. All we can say in this case is that the acts of the respondent were the acts of the Attorney-General, that they are not of such a nature as, when done aside from his capacity as an attorney-at-law, would justify action against him in his professional capacity; that the Attorney-General is a member of a coordinate department of the government and that this court has no jurisdiction in a proceeding of this kind to pass upon his acts as Attorney-General. Of course the court has control over its own proceedings and may control the action of the Attorney-General to a greater or less extent in proceedings in which he is engaged before it, but it cannot in a proceeding of this character and entirely apart from the matter in connection with which he has acted hold him to account for acts performed in his official capacity and within his legal powers.

If the Attorney-General in this case committed an error of judgment or acted unwisely either in permitting an employee in his department to appear for the defense in a criminal case or in afterwards imposing a restraint upon the private counsel engaged to conduct the prosecution, he may be held to account before the bar of public opinion and if he has shown incapacity for the due performance of his official duties or mal-administration in office, he may be brought before the court of impeachment. But for this court to pass upon the moral quality of his official acts in a proceeding of this kind would be officious and improper.

The complaint is dismissed.

*Kinney, Ballou & McClanahan* for the complainant.

*W. O. Smith* for the respondent.